Case number 22-3544, Marvin Johnson v. David Bobby. Oral argument is not to exceed 20 minutes per side. Mr. Gatterdam, you may proceed for the appellant. Good afternoon. May it please the Court. My name is Court Gatterdam and myself and Tim Sweeney represent Marvin Johnson. I'd like to reserve five minutes for rebuttal, if I could. Sure. And we did cut the time down a little bit, but if you need more, we're happy to entertain it. Thank you. We're here today on the appeal of the denial of a habeas corpus petition in the District Court in Columbus. We're here on the District Court's grant of a certificate of appealability for two issues, which were our issues 10 and 13 in our habeas petition. We're also here on pleadings filed by the parties to address a change in Marvin Johnson's status, and we identified that to the Court last fall. Serious mental illness statute in Ohio recently passed. Marvin Johnson was declared seriously mentally ill in August of 2024. So that everything else about his confinement stays the same. We attached to our pleadings the entries granting serious mental illness relief and changing the only one thing from his sentencing entry from a death sentence to a life without parole sentence. Is anything else going on? I think I recall reading that there was no appeal taken. Correct. Anything else going on in State Court with that case? Nothing else in State Court. The time has passed for either side to appeal, and it was actually done jointly. The parties jointly agreed, and the assigned judge accepted the findings of fact, conclusions of law of the parties. So no, this is the only thing that he has pending at the current time. That was, I think we'd all agree, a very good development for your client. Correct. With respect to this appeal, what is left for us to do? In other words, this case was briefed very much attacking the sentence. A lot of the arguments really focused on the sentencing phase, and now the serious component of the sentencing phase has been resolved, or a serious component has been resolved through the State Court mechanism. Can you help me understand what are the issues that you think are still alive vis-à-vis the guilt phase? Yes. What is left are the two issues that the District Court granted a Certificate of Appeal Ability, that being ineffective assistance of trial counsel, and secondly, ineffective assistance. Was it granted that COA before the State mechanism kicked in? I'm sorry? The COA was granted before the – I'm trying to remember the timing – before the SMI issue? Yes, yes. The SMI was just within the last few months. In other words, those were sort of granted with an eye towards, at that time, a death sentence for your client. And that's off the table. And a lot of your briefing really focused on the death aspects of the sentence and why the crimes that came in or the hearsay information that came in really affected the sentencing phase. That's fair, but we also, because the hearsay was introduced in the trial phase and Marvin Johnson's record was introduced in the trial phase, we have also argued both below and before this Court that a new trial, not a new penalty phase, but a new trial is inuring to Marvin Johnson because of these errors. My read of the briefing was when you talk about ineffective assistance of counselors, particularly the prejudice, it seemed like your argument on prejudice was prejudice because he received the death penalty. It was hard for me to read it as prejudice based on anything else other than getting a death penalty. I don't disagree that we raised prejudice, particularly with the juror affidavits, because that raised the issue of future dangerousness, which sounds in the death penalty. But we did, in fact, claim that an opening statement and through witness testimony presenting Marvin Johnson's record impacted the jury's decision to find him guilty of all counts in the trial phase. We also found that Mikia... Can you unpack that a little bit, because since the briefing was so much focused on the death penalty and all of the affidavits were about, well, yeah, we feel like we needed to have the death penalty in order to make sure that he didn't get out and do this again, I'm having difficulty understanding how you can demonstrate prejudice from that perspective. It seems like the evidence of guilt was pretty overwhelming. There were issues. I don't disagree there was evidence of guilt, but we raised... Not to mention the opening statement where guilt was actually, you know, a given. It was essentially conceded to a degree, but not necessarily to the extent of all counts and specs. And that's why the convictions, the criminal history, it was so egregious because counsel filed a motion to exclude criminal history. And then the first thing in the case, an opening statement, they raised his criminal history. That is a trial phase issue. Yes, does it inure also to the death penalty? Yes, it does. But it doesn't go away because the death penalty went away. He didn't get a fair trial because his counsel stood up and said he's convicted of arson, he's convicted of escape, he's convicted of assaulting a deputy. That made what the jury was going to hear next, was he guilty of aggravated robbery, was he guilty of premeditated murder? It changed the calculus. And then bringing the victim's mother to the stand to testify to his criminal history, that is not fair in either phase of a trial, of a death penalty trial. So in addition to that, we raised ineffective appellate assistance for a Crawford violation. Crawford came out ten months later when briefing was still being done in this case. Appellate counsel could have raised the issue of well-known snitch Mickey Alexander being planted in Marvin Johnson's cell to get a confession out of him, to tell him where the robbery evidence was, to tell him all kinds of other things. That made the trial unfair as well as the death sentence unfair. Well, can I ask you about that, though? Certainly. So this jailhouse snitch person who's talking, let's say that the prosecution had merely asked the question of the detective on the stand, did you ever find the key to Tina Bailey's house? And the detective said, yes, I did. Where did you find it? And he says where he found it. Did you ever find the money that he allegedly stole? Why, yes, I did. Where was that money? Here. They didn't even need that information, I guess is the point that I'm making. So at least with respect to the Strickland part of it, and I realize you're making a Crawford argument too, but at least as to the prejudice, I don't really see where there's any prejudice there, because irrespective of whether or not there was a snitch or where they got that information, that wasn't going to have any impact on whether or not that evidence came in. Do you disagree with that? I don't disagree completely, but I do disagree that I believe two detectives testified, and I believe they did a little more than simply saying what they did. I believe they were. No, no, they did. Mine was the hypothetical. Yeah. My point was is that it didn't make a difference. If your hypothetical was our fact pattern, I'd have a much tougher time explaining to you where the prejudice is, but it's not. And the evidence came in that Mickey Alexander is the one. The hypothetical does not show that it's sort of a harmless error here. If the officer could have just testified the way that Judge Davis suggested, where did you find it, and where was the key, where was the money? Doesn't that show that any confrontation clause concern was harmless? I don't think so, because it didn't go down the way Judge Davis' hypothetical came out. It went down that Mickey Alexander was the one providing the information, and Marvin Johnson never got to confront Mickey Alexander about the fact that he makes stuff up all the time, that he has been a snitch for years and years, and he needed to attack his credibility. So simply saying this is where we found it might be a different fact pattern, but, again, where did you find it? It didn't just show up. You didn't just get a phone call, a random phone call, and somebody anonymously said. You got it from Mickey Alexander, who the defense claimed was planted in his cell, which is a Messiah violation. So Marvin Johnson deserved the opportunity to confront his accusers. When they chose to present that evidence, they also should have presented it. The record reveals Mickey Alexander was available, so we don't have an unavailability issue here. He was there. He was ready to testify. They saw the easy way out, not subject. Is there any reason trial counsel might not have wanted Alexander to testify? We took their depositions, and I don't recall they ever said there was a reason that we wanted to have the detective's testimony and not Mickey Alexander's. Could that be an issue? Yes. It did not come out in the depositions to the best of my knowledge of the record. Would Alexander have been able to say something about a confession by your client? He would have, but he would have also had to then say that he said other defendants confessed and they're proven wrong. I mean, he would have had to subject his credibility to the test, and that's what defense counsel would have wanted to do, to show you can't believe a word he says. Therefore, if the detectives are saying they found it because Mickey told them, the jury should disregard that. Now, was there an – Is it perfectly reasonable, though, for the trial counsel to – tough issue. Put him on, he says some good things about some bad things. You don't put him on, you only get this limited statement. Isn't this a perfectly – just a judgment call for trial counsel? Well, certainly it's a judgment call, but if it's a judgment call to his prejudice – Put the informant on the stand? That's the only way to try the case? I think that it would be reasonable to put the informant on when you – That's not the question I asked. I understand. I don't know that every counsel would say do that. I would agree. This could go either way. It could be a strategy decision, but given the problems with Mickey Alexander's credibility, and as one of you has indicated, right off the bat, the evidence was almost conceded. So there was a need to dig in deeper to Mickey Alexander. There was not a need to just simply let it go and let's just pick the easy way out and let the two detectives sanitize it and sanitize Mickey Alexander from ever being subjected to cross-examination. I don't know what would have happened, but a reasonable strategy when you're fighting for your client's life is not to punt and let the easy – They didn't get anything out of the detectives, so that was a loss. I don't know if it would have been a loss to Mickey. Isn't it a little bit more reasonable here because even if they were able – the defense counsel were able to severely damage the credibility of Mickey Alexander, that wouldn't get rid of the fact that the key was still in the defendant's wallet and the money was found where it was. So irrespective of whether or not folks looked at Mickey Alexander and said, oh, this guy's got a history of really making things up and we don't believe him and those kinds of things, really in terms of, at least with respect to the murder counts and getting into the house and those kinds of things, that evidence was tangible evidence regardless, right? It was tangible evidence, but I'm not sure the link would have been there if you didn't have the detectives saying how they found it in this case. The link is Mickey Alexander told us all this. We got it off from Mickey Alexander. That's the problem in this case. If it came in another way, I would not have as good of an argument. But when you're relying upon the snitch whose credibility was not attacked because they didn't present him – and here's the other thing to your question, Your Honor. They started to object – the defense counsel did object to the hearsay about Mickey Alexander coming in. They didn't raise it as a confrontation, but they started to object. So they knew this was problematic, and then they just quit. They just stopped. That's not reasonable. The objections were being sustained, so initially the Mickey Alexander evidence was not going to come in through the detectives. But the prosecution, to their credit, plowed ahead, and the objections stopped. Defense counsel was ineffective, and it all came in, just like in the first assignment of error with Marvin Johnson's criminal history. The defense counsel got an order, no objection from the state, criminal history does not come in in the trial phase. And back to the questions about whether this is mostly a penalty phase argument. Well, that very argument at the beginning was it doesn't come in in the trial phase. And yet, even after getting an order from the trial judge, the defense counsel, for reasons unknown, we asked him in the depositions, why did you do this? They said, we don't know. We didn't want that evidence to come in. We didn't want his criminal history because we know that that could impact the jury, believing he has a propensity to commit violent crime. But yet they did it in opening statement, and then they allowed Tina Bailey, the victim's mother, to go on through his history of arson, escape, assault. Just to make sure I understand your argument on the prejudice prong, there are some really bad facts here. Agreed. So your point is that because the facts were so bad that the defense counsel had to do everything possible, all judgment calls should be in favor of being aggressive, like a football team that's way behind. We need to sort of throw the Hail Mary every time. In other words, the evidence is so bad of prejudice, are you saying that somehow magnified the errors because the defense counsel had to do something to overcome this very difficult case? Well, the defense counsel had to know how bad the evidence was going to be and then make a strategic decision. You're saying that informs the strategy somehow, that informs the... Yes, when you know that the detectives are going to come in and give the aggravated robbery evidence. When you know the facts are bad, you don't introduce evidence that your client has been convicted of escape and assault on a police officer and arson. It just makes the mountain much higher to climb. So when making those strategic decisions, and we admit they're strategic decisions, they had to make it about Mickey Alexander, not about Marvin Johnson's record, not about his criminal history, not scaring the jurors because they thought about an escape and that he would escape one day and come after them or come after Tina Bailey. That was foreseeable to defense counsel because they admitted it was bad stuff and it shouldn't have come in. They don't remember why they chose that path, but they did choose that path. And as a result, Marvin Johnson didn't get a fair trial and didn't get a fair penalty phase hearing. Fortunately, the penalty phase portion is no longer before this court, but the trial is. Your time is up. Anyone else have any questions? Okay, well, you'll have your rebuttal time as well. Thank you. May it please the court. Assistant Attorney General Charles Willey arguing on behalf of the warden. Yes, there are two essential issues today. First, a jurisdictional question, whether the court really does now have the authority to resolve the claims in the petition. And secondly, if the court does have jurisdiction, then of course whether the Ohio Supreme Court was objectively reasonable in denying the claims which are the subject of this appeal. Now, in terms of the jurisdictional question, the state's position here is pretty simple. In Magwood v. Patterson, the Supreme Court held that the linchpin of federal habeas jurisdiction is the judgment under which the prisoner is being held in custody. A judgment, of course, has two aspects, a conviction and a sentence. But the Supreme Court has said that for the purposes of habeas corpus, the sentence is the judgment. And that makes a lot of sense because if you think about it, if a conviction is found to be in violation of the Constitution, then the sentence automatically is because no one can be sentenced based on a conviction that is unconstitutional. On the other hand- That case had to do with whether something was second or successive, right, whether a habeas petition was a second or successive petition. And in that context, it would seem like you'd want to look and decide what was decided, what was at issue, what was appealed in the first case. And so maybe you would look at the judgment, the sentence, the way you're describing. But isn't this sort of a different analysis? Actually, Your Honor, not really. And here's why. And this is a little complicated, I think. It's all complicated. It's all habeas. It's all complicated. But what the question here is, what's a judgment for the purposes of habeas corpus? And what is the linchpin, the trigger of jurisdiction? The court decided that question based on the statute itself. Now, interestingly enough, the state said, no, no, no, you should do it by a claim-by-claim basis because you've really got to look at the claims specifically. But the Supreme Court rejected that. Instead, went right to the statute and interpreted the statute to say that it's the judgment. Now, that has a lot of significance, not only just with respect to whether something is a second petition, because the very question of whether something is a second petition depends on the judgment itself. So, I mean, at heart, habeas corpus is about producing the body, right? Someone's being held unlawfully. And when we, you know, for example, we order relief, we don't order a modification to the state court's judgment. We order that the prisoner be released or conditionally released or that sort of thing. Well, that's true, Your Honor, but in the sense that typically it's a conditional. The writ is a conditional writ, if possible, which allows the court to correct the constitutional violation. Most of the time that's possible either by a new trial or a new sentencing proceeding. So, in essence, really, habeas corpus really does come down to custody because really, if you look at it, the remedy is release. I mean, that's because you're no longer being held. Well, doesn't that make, I'm sorry, doesn't that make Judge Radler's point, which is probably what he was going to say? Again, I think that in the sense that release is connected with custody and what is the nature of the judgment, is the judgment valid under which the prisoner is being held? And that, again, depends. The judgment itself really depends on the sentence as opposed to the conviction. If the sentence is invalid, the judgment is invalid, and now you have no longer an issue for habeas corpus because the judgment under which the petition was filed no longer exists. There's now a new judgment. And, therefore, that's how it comes into play, why a prisoner can file another petition. He can file another petition because he's not attacking the judgment that he attacked in his first petition. So he could file another one. Yes, absolutely. The question is whether he has to. Well, if you look at King v. Morgan, again, I think it's interesting because the state in that case argued for a claim-by-claim assessment, and this court said no. Under Magwood, we look to the judgment, and the court recognized that the prisoner could raise, even though the sentence was the only thing that was altered in the judgment, the court recognized that the prisoner could bring claims against his conviction again. When we're looking at mootness, the question is whether we can grant any effectual relief, and I struggle to see why we couldn't, the facts and the law supported it, why we couldn't order a new trial based on the convictions here. What stops us from doing that? Well, one principle we think of constitutional mootness is whether a judgment is contingent and or whether a judgment is necessary. In this particular instance, it's not necessary for the court to really determine whether his conviction claims are valid because he is going to be able to file another petition. He can do that, and the court will have to decide if he files another petition. That doesn't mean that this is moot just because he can file a second petition. Why does that mean that this case is moot? It's moot because one principle we think of mootness is does a court have to decide something? I think the words are an advisory opinion is something that the court really doesn't have either does, can do, and doesn't matter, or it's something that the court doesn't have to do and doesn't anyway. In this case, both criteria are satisfied because if the court denies him relief on his guilt phase claims, it doesn't make any difference. He can come back. He can raise the same claims. As a matter of fact, as this court indicated in King v. Morgan, race judicata doesn't apply. Law of the case doesn't apply. Now the court said, well, it would be easy for the district court. Your concern is he'll file a second or successive and we'll allow that. Your concern is if we decide this one on the merits, even say we deny, we rule for the state, your concern is he's going to come back and file another one? We think he will come back because he has the right to do that and we would anticipate that. But aside from that, though, I think our position here is... Right? You mean it wouldn't be second or successive because there's a new judgment? That's right. It wouldn't be. Oh, yeah. We understand that. I mean, that's the Magwood v. Patterson and King v. Morgan. It would not be a second petition because it's a different judgment. We understand that and we expect that. And the second aspect is that when you look at jurisdiction itself, I think a principle of jurisdiction is whether a court has jurisdiction or not can never depend on the merits of a claim because first the court has to decide whether the court has power to consider the claim. Now, in this instance, I think it's pretty clear that if the court denied him relief on his claims, challenging his conviction, wouldn't make any difference. He could raise them again. On the other hand, for the court to decide they might have merit, the court would first have to decide, well, do we have jurisdiction, before we can even determine whether his claims have merit. Your Honors, I think our position really comes down to we're kind of compelled to go with the Supreme Court because I think it is relevant that the state twice argued that, no, no, no, you should do a claim by claim basis. And both times, well, it wasn't us, Magwood, of course, but we also argued I think in King v. Morgan you should do the same thing, claim by claim. And we lost. And I think, too, I thought this was interesting because in my supplemental brief, I did have to say that, well, you know, we had some little bit of sympathy for the idea that seemingly all that time adjuding a claim is now gone. And we sort of had sympathy for that. But, nevertheless, our argument was compelled by the Supreme Court's decision. I mean, there's no way around Magwood v. Patterson. We have to follow the Supreme Court, too, so we will do our best to review those cases and figure out how. Thank you, Your Honors. Do you want to move on to the other? I'd like to. The gist of this, the guilt claims, is, of course, whether the Ohio Supreme Court was objectively reasonable. One could say, though, cutting right through the standard of deference and getting just sort of going right to the guts of the situation, there could possibly be no way to show prejudice in this case. One, the evidence was overwhelming. Two, the defense conceded guilt, essentially. And, of course, the propriety of that concession is not before this court because it was raised as a claim, but it was denied and it wasn't certified for appeal. But aside from that, the defendant himself, in a closing argument, began his closing argument by saying, you know, I pretty much agree with everything the prosecutor said. I'm guilty. You can find me guilty. But here's what I want to explain. He starts out in front of the jury telling the jury, I'm guilty. Now, when you take that instance there, we would submit it's inconceivable to think that somehow the defendant, the petitioner, could have been prejudiced. Somehow his guilty verdict was tainted by some references to his prior criminal record or some of the victim's testimony. Is there justification for bringing in those prior offenses? Is there any strategy call you can think of? The Ohio Supreme Court, I think, reasonably found that the counsel for the defense knew that there's a really good chance that his prior criminal record was going to come out sooner or later, especially with respect to the guilt phase of the case. He also could have thought that because the victim's mother testified that she had, essentially, she had lived with Johnson for a while and they had problems. She let him come back. I mean, even though he was giving problems to her, she, to some extent, recognized that and she let him come back to the house a few times. So the defense attorney was, as the Supreme Court of Ohio reasoned, was maybe attempting to link his criminal record with the idea that the victim's mother still accepted him, still allowed him to be in the house, even though she knew he had a criminal record. She knew that he had been in trouble in another state. So the Ohio Supreme Court thought that that could have been a reasonable basis, but in any event, the Ohio Supreme Court said he wasn't prejudiced, and that is overwhelmingly supported by the record. I understand your argument is really more geared toward the prejudice, but I just want to circle back to what you just said. Brother counsel makes the argument in briefing that the Ohio Supreme Court came up with this reason that perhaps a defense attorney might adopt this strategy, but the attorneys on this case themselves did not articulate that as a reason for why they took the actions that they did. Should we be concerned about that in evaluating the deficiency prong if we were to look into that? No, and the reason for that is because now we have the Penholster case come into play. In Penholster, the Supreme Court said that when a state adjudicates a claim on the merits, the federal court in review is limited to the record that was before the state court that decided the claim. These claims were raised on direct appeal. So there was no deposition, no out-of-court statements by the trial attorneys were available to the Ohio Supreme Court when they decided the claim. Also, with respect to the ineffective assistance of appellate counsel claim, once again, the Ohio Supreme Court was limited to the record before it in terms of deciding whether it was reasonable for appellate counsel not to raise the claim. In that regard, a couple of things here I think are pretty important. First of all, I think that the prisoner does, he concedes that on the Crawford error, there really wasn't a specific objection under the confrontation clause. So an appellate attorney has to think, well, first of all, am I going to be subject to the plain error rule? In other words, because the attorney didn't lodge an appropriate objection, I have to argue plain error? Well, that would considerably reduce the strength of a claim when it's not preserved below by an appropriate objection. Secondly, the attorney could have looked at this and said, well, there's some dispute here about whether this really is a confrontation clause problem. After all, it does seem to indicate that the evidence was introduced not for the purposes of the truth of the matter asserted, but rather to show the reasons why the police looked in a particular place for the money and the bank envelope. Third, he might say, am I going to have prejudice here? Because it wasn't disputed where these things were found. And it wasn't disputed the circumstances under which the bank envelope and the money got there. So am I going to be able to show somehow that there was prejudice with respect to this particular claim? And also, there's the idea that appellate counsel could have said, even if I did all that, how am I going to overcome the fact that the defense attorney conceded guilt and that my client himself got up and told the jury that he was guilty? And it bears emphasis that these things, in terms of the detective's testimony, didn't really concern anything that was really in dispute at the trial. It is one thing to say that, well, there was some real question about where this money was found. Where was it found? No, that wasn't. Everybody knew where it was found, so that really wasn't a question. The idea then also that there really wasn't anything here that, by the same token, appellate counsel could have said, was there a reason that maybe trial counsel didn't want Alexander to testify and be confronted? And here the district court looked at this and came up with a pretty sage observation, in our opinion. If you have a snitch and the defendant has said things to the snitch that might be more directed admissions of guilt, would you rather put the snitch on there and have him repeat those things too? Or would it be better, let them testify the hearsay stuff about what the snitch said about where they might find the money in the envelope? That's certainly a lot better than having the snitch up there talking about some other things that he says the defendant said. Sure, you could cross-examine him about that, but would you really rather have the opportunity to cross-examine or would you rather have it not even be brought up in the first place? Because if the snitch doesn't testify and you know what he's testifying to is limited to where they found the money in the envelope, that's a pretty good reason for deciding not to really press that kind of claim. Therefore, it's a very good reason for the appellate attorney to decide that's not a very good claim to raise on appeal. The long and short of it is we have the standard of deference here. It does apply. We don't have to worry about anything that the attorney said in depositions, which arguably really was kind of consistent because I believe that one of the attorneys said, well, I didn't think the confrontation clause was implicated here because it wasn't offered for the truth of the matter. Aside from that, if you go through all that, the standard of deference, if you really look at this case, it comes down to there's no way under the facts of this case that any prejudice could have been shown in the guilt phase of the case. And so at that juncture, you have to say, were the state courts reasonable? Was the Ohio Supreme Court reasonable? Yes, because if you look at, you can really say that it's very reasonable for the Ohio Supreme Court to think that none of these things really mattered, even if they were errors. In that regard, then, I would ask that the court, first, I would ask that the court consider our jurisdictional argument, and if the court finds it valid, then just dismiss for lack of jurisdiction. But if the court decides that it does have jurisdiction, we would ask that the court affirm the judgment of the district court. Does the court have any further questions? I don't think so, but thank you very much.   It pleases the court. On the jurisdictional issue, the Woodfolk case, Malang case, Carafas case, say you look at the custody at the time the individual files the habeas petition. Marvin Johnson has always been confined illegally. His habeas petition under 2254 claimed that. This court has jurisdiction because the district court had jurisdiction because he was unlawfully confined, then found against Marvin Johnson, filed a notice of appeal, granted a certificate of appealability. This court has all it needs for jurisdiction. Magwood, King, Stanzel, a red herring, as Judge Rayler indicated. The Woodfolk case says it best. Woodfolk says there's no authority requiring a defendant to withdraw pending habeas and start a new lengthy post-conviction process just to get review of an undisturbed conviction, simply because the sentence modified by the trial court. We've been in federal court since 2008. We're here in front of you for two issues. It makes no sense for judicial economy, for continuity of counsel purposes, for a whole host of other reasons to go back and start anew. Let me ask you another economy question. Suppose we say we have jurisdiction, but we rule against your client. Is it your position you can then file, you can do 2254 again, and it won't be second or successive because there's a new judgment? I believe that would be the case. Somebody could think that and move forward under that, but it would be just like having to go back to the district court. It's the same issues. Nothing has changed, so the same result would, in theory, occur. So could it happen based on Magwood, and Magwood dealt with 2244 issues. Do you have to go to the circuit court of appeals to get permission to file a second petition? That's what that dealt with. It doesn't deal with the issue before you. It's the custody, the illegal confinement, which Marvin Johnson has always been subject to. As to the merits, my opponent indicates that there could have been strategy that the prior convictions was going to come out sooner or later in the guilt phase. There is no way that's accurate. Prior convictions do not come out in the guilt phase of a capital trial unless the defendant testifies. Now, he was his own attorney, and we did raise and ask this court to expand the COA as to his competency and his ability to represent himself, but he did not testify, so his prior convictions were never going to come in. Again, why then would defense counsel file a motion asking for all of his convictions to be excluded if they thought it was going to come in, if there was some strategy? The depositions show there was no strategy. Finally, my opponent brings up the issue of Mickey Alexander again. Mickey Alexander, there was no reason not to go after him. I understand strategy, but if you don't take the chance, you already know the evidence is against you, and if you don't take the chance and just say, well, maybe we should be safe and stay away from this, that's not what they said in depositions. They didn't say they were being safe and just trying to get out without getting any really bad evidence. So they didn't think about it, and that's not strategic. That is ineffective assistance. That's deficient performance and prejudice. I realize we've talked a lot about prejudice. It is a bad case, but when you go after a witness that then you can sink your teeth into and just destroy that witness, then you have something to say in closing argument because this entire case is based on Mickey Alexander telling him this, this, and this. It's all not true. He's a liar. That's what they should have done. That's what they didn't do, and for these reasons, we ask this court to decide the issues, grant a new trial to Marvin Johnson on both issues, and allow him to return to the Guernsey County Common Pleas Court for a new trial. Okay, thank you very much. We thank both counsel. The case is submitted, and especially thank Appellate Counsel for your appointment and your service to the court. I think that's all for today. We can adjourn court.